**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose Salvador CHAVEZ, Defendant–
Appellant.**

No. 03–1482.

United States Court of Appeals,
Tenth Circuit.

June 21, 2005.

John W. Suthers, U.S. Attorney, Robert M. Russel, Office of the United States

Attorney, Denver, CO, Craig F. Wallace, United States Attorney's Office, Grand Junction, CO, for Plaintiff–Appellee.

Frank E. Moya, Denver, CO, for Defendant–Appellant.

Before TACHA, Chief Circuit Judge, and PORFILIO and BRORBY, Senior Circuit Judges.

## ORDER ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

WADE BRORBY, Circuit Judge.

Appellant Jose Salvador Chavez was found guilty by a jury of one count of distribution of fifty grams or more of a mixture or substance containing methamphetamine, one count of distributing a mixture of cocaine, one count of possession with intent to distribute methamphetamine, and one count of possession with intent to distribute cocaine, all in violation of 21 U.S.C. § 841. *See United States v. Chavez*, 98 Fed. Appx. 806, 2004 WL 1157780 at *1 (10th Cir. May 25, 2004) (unpublished op.) (*Chavez I*), *vacated and remanded, Chavez v. United States,* —— U.S. ——, 125 S.Ct. 1039, 160 L.Ed.2d 1028 (2005) (*Chavez II*). The district court sentenced him to 108 months imprisonment on each of the four counts, to run concurrently, after determining Mr. Chavez possessed a firearm in conjunction with his offenses, for the purpose of enhancing his sentence under United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) and declining to reduce his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1. *Chavez I,* 2004 WL 1157780 at *2.

Mr. Chavez appealed his four 108–month concurrent sentences based solely on the grounds the district court erred by declining to reduce his sentence for acceptance of responsibility. *Id.* On May 25, 2004, we

affirmed his convictions and sentences. *Id.* at *1, *6. Thereafter, the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In his appeal to the Supreme Court, Mr. Chavez raised an issue different from the acceptance of responsibility issue this court addressed. For the first time, he raised a Sixth Amendment *Blakely* argument, asserting the district court erred in making a factual determination he possessed a firearm in conjunction with his offenses for the purpose of enhancing his sentence under U.S.S.G. § 2D1.1(b)(1). The Supreme Court then decided *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and thereafter summarily vacated and remanded our decision in Mr. Chavez's case for further consideration in light of *Booker. Chavez II,* 125 S.Ct. at 1039. The parties filed supplemental pleadings on the applicability of *Booker* and related cases and on whether Mr. Chavez abandoned the issue he now raises by failing to previously appeal it to this court. Based on the following discussion, we reinstate our previous Order and Judgment and affirm Mr. Chavez's sentences.

### I. Factual Background

We first recite facts presented to the jury and discussed in our prior decision, as well as evidence concerning the newly-raised firearm enhancement issue which was not addressed in our prior decision. A government informant with whom Mr. Chavez was acquainted told Mr. Chavez his "boss" wanted to purchase large quantities of cocaine and methamphetamine and then asked Mr. Chavez if he could supply them. *Chavez I,* 2004 WL 1157780 at *1. Mr. Chavez told him he could obtain them, and later gave him a methamphetamine sample to give to his "boss." *Id.* The

informant set up a meeting between Mr. Chavez and his "boss"—Dave Storm, a special agent with the Drug Enforcement Agency. *Id.* Later, during a recorded conversation, Mr. Chavez agreed to sell Agent Storm five ounces of methamphetamine. *Id.*

A day later, Mr. Chavez, Agent Storm, and the informant met outside Mr. Chavez's home, during which time their conversations were recorded. *Id.* Mr. Chavez offered to sell Agent Storm two ounces of methamphetamine and two ounces of cocaine. *Id.* Agent Storm saw Mr. Chavez retrieve the drugs from bushes behind his house, after which Agent Storm paid Mr. Chavez $3,400 and left. *Id.*

Later, Mr. Chavez and the informant met at Mr. Chavez's residence, where Mr. Chavez showed him three ounces of methamphetamine, but said he had five ounces of methamphetamine and two ounces of cocaine for sale. *Id.* Later that day, pursuant to a search warrant, agents knocked, announced, and entered Mr. Chavez's home. *Id.* Once arrested and asked where the drugs were, Mr. Chavez denied all knowledge of any drugs but later led agents to the backyard and some trees, where he showed them a sack containing approximately five ounces of methamphetamine and two ounces of cocaine under a tree. *Id.* The drugs were found approximately seventy-five to 100 yards from the house. In the course of their search, agents also found a Beretta 9 mm semi-automatic handgun under a pile of clothes in Mr. Chavez's bedroom. *Id.* At the time of his arrest, Mr. Chavez admitted the room in which the gun was found was his bedroom.

During the trial, Mr. Chavez attempted to rebut the government's evidence he possessed the gun. He testified the gun was not his, but belonged to an illegal immigrant couple who stayed with him a few months before they were sent back to Mexico. When asked whether he put the gun in his bedroom, he stated, "[i]t wasn't there where I slept exactly because my bed is over in one corner, and *I put it away over there* with some clothes.... It's there in the corner in there where the clothes are. *That's where I put it.*" (Emphasis added.)

After the jury convicted Mr. Chavez of all four drug-related counts, the probation officer prepared the presentence report, recommending a two-level enhancement under U.S.S.G. § 2D1.1 because he possessed a firearm in conjunction with the offenses. Applying various other sentencing factors, the probation officer calculated Mr. Chavez's total offense level at 30 and his criminal history category at III, for a final Guidelines range of 121 to 151 months imprisonment. *Chavez I*, 2004 WL 1157780 at *2. Through counsel, Mr. Chavez objected to the recommendation not to apply a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and to over-representation of his criminal history, but did not object to the two-level firearm enhancement. *Id.*

At the sentencing hearing, the district court determined the two-level reduction for acceptance of responsibility did not apply. *Id.* Nonetheless, the district court granted Mr. Chavez a downward departure for over-representation of his criminal history, thereby reducing his criminal history from III to II. *Id.* Despite the government's request for a sentence in the middle of the Guidelines range, the district court applied the bottom of the sentencing range, as requested by Mr. Chavez, for a sentence of 108 months imprisonment on each of the four counts, to run concurrently. *Id.*

## II. Discussion

We begin by discussing the issue of whether Mr. Chavez abandoned or waived

the issue he now presents on remand. Mr. Chavez admits he never raised an objection during sentencing on any grounds concerning the firearm enhancement and, similarly, did not raise it as an issue on appeal. However, Mr. Chavez contends he is not precluded from raising the issue now, as the Supreme Court's remand to this court is still part of his direct appeal and because during his appeal to the Supreme Court it decided both *Blakely* and *Booker,* which must now be applied on remand.

The government counters Mr. Chavez waived or abandoned his claim by failing to object to the enhancement at sentencing or on appeal and asserts the fact he raised a *Blakely* Sixth Amendment claim for the first time to the Supreme Court does not change the status of his claim. In support, it relies on the Eleventh Circuit's decision in *United States v. Dockery,* where that court determined the Supreme Court's remand, in light of *Booker,* did not require it to treat a constitutional challenge not raised in the initial brief as either timely or not abandoned. 401 F.3d 1261, 1262–63 (11th Cir.2005) (*per curiam* ) (relying on *United States v. Ardley,* 242 F.3d 989 (11th Cir.2001)).[1]

In determining whether Mr. Chavez properly raised the argument for our consideration, we look to the Supreme Court's instructions in *Booker* on when to apply the rule contained therein, where it repeated the principle that " 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review *or not yet final.'* " 125 U.S. at 769, 8 S.Ct. 1024 (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)) (alteration omitted and emphasis added). The Supreme Court defines "final" to mean "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith,* 479 U.S. at 321 n. 6, 107 S.Ct. 708. *See also Johnston v. Cigna Corp.,* 14 F.3d 486, 489 n. 4 (10th Cir.1993). *Booker* also instructs us "to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." 543 U.S. at ——, 125 S.Ct. at 769.

When addressing a prior *Apprendi* remand where this court's disposition of the direct appeal preceded the Supreme Court's issuance of *Apprendi,* this court retroactively applied *Apprendi,* relying on the Supreme Court's determination " ' "a new rule for the conduct of criminal prosecutions, '*Apprendi,*' is to be applied retro-

---

1. We note our resolution of the issue of abandonment or waiver is not fully answered by the Eleventh Circuit's decision in *Dockery.* Not only are we not bound by Eleventh Circuit precedent, but we note this court's approach regarding past remands under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), differed from the Eleventh Circuit's, which previously declined to consider *Apprendi* issues for the first time in supplemental briefings on remand from the Supreme Court. *Compare Ardley,* 242 F.3d at 990 (declining to apply *Apprendi* on remand, even though direct appeal preceded Supreme Court's *Apprendi* decision, and basing its decision on its well-established rule that issues not raised in initial brief are considered abandoned) *with United States v. Jackson,* 240 F.3d 1245, 1247–48 & n. 3 (10th Cir.2001) (addressing *Apprendi* issues for plain error on remand where our disposition of the case on direct appeal, like here, preceded the Supreme Court's *Apprendi* decision). *See also United States v. Carrington,* 301 F.3d 204, 208 (4th Cir.2002) (addressing remanded *Apprendi* issue not raised in opening brief for plain error); *United States v. Randle,* 304 F.3d 373, 376 (5th Cir.2002) (same). For these reasons, the Eleventh Circuit's decision in *Dockery* is not completely dispositive of the issue at hand.

actively to all cases ... pending on direct review or not yet final." ' " *Jackson,* 240 F.3d at 1248 n. 3 (quoting, in part, *Griffith,* 479 U.S. at 328, 107 S.Ct. 708). Hence, in a similar situation to the one here, we did not consider the issue waived. But in this case, we need not resolve the waiver issue as it will not affect the outcome of this appeal. This is because even if we determine Mr. Chavez did not waive or abandon his *Blakely* claim he cannot prevail.

Admittedly, Mr. Chavez presents a Sixth Amendment constitutional error argument based on judicially-found facts because the district court found facts supporting the enhancement under U.S.S.G. § 2D1.1(b)(1), which provides for a defendant's offense level to be increased by two levels if a dangerous weapon, including a firearm, was possessed in connection with a drug offense. *See United States v. Gonzalez–Huerta,* 403 F.3d 727, 731 (10th Cir. 2005). However, because Mr. Chavez did not previously challenge his enhancement, we review it for plain error. *See United States v. Ambort,* 405 F.3d 1109, 1118 (10th Cir.2005). Where, as here, the claim is constitutional, we conduct our plain error analysis " 'less rigidly' " than nonconstitutional errors. *United States v. Dazey,* 403 F.3d 1147, 1174 (10th Cir.2005) (quoting *United States v. James,* 257 F.3d 1173, 1182 (10th Cir.2001)).

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez–Huerta,* 403 F.3d at 732 (quotation marks and citation omitted). Applying *Booker,* the first two factors in our plain error analysis are easily resolved because the district court clearly committed an error when it determined the facts supporting the enhancement, and the error is plain. *Id.*

However, in determining the third factor on whether the error affected substantial rights, the burden is on Mr. Chavez to show the error is prejudicial; *i.e.,* the error " 'must have affected the outcome of the district court proceedings.' " *Ambort,* 405 F.3d at 1118 (quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). In meeting this burden, he must show " 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.' " *Id.* (quotation marks and citations omitted).

This circuit has announced at least two ways a defendant can meet this burden, by either: 1) showing a reasonable probability a jury applying a reasonable doubt standard would not have found the same material facts a judge found by a preponderance of the evidence; or 2) demonstrating a reasonable probability that, under the specific facts of the case as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would reasonably impose a sentence outside the Guidelines range. *See Dazey,* 403 F.3d at 1175.

Mr. Chavez fails to meet his burden under either scenario. First, overwhelming evidence established he possessed the gun in conjunction with his drug dealings. Substantial evidence was offered, including tape recordings of Mr. Chavez's drug dealings, to establish his distribution of drugs from his home, where the gun was found. Furthermore, he admitted he placed the gun in a pile of clothes in his bedroom, and it is significant to note the gun was found on the same day he transacted drugs and then ultimately lead the police to his stash of drugs only seventy-five to 100 yards from his house. While Mr. Chavez claimed the gun belonged to others, he nevertheless admitted he placed it in his clothes in the room where he slept and, thereby, admittedly possessed it. Based

on the overwhelming evidence in the record supporting the enhancement, Mr. Chavez fails to show a reasonable probability a jury evaluating the same evidence under a reasonable doubt standard would not have found the same material facts as found by the district court. Accordingly, he fails, under the first scenario, to establish his substantial rights were violated by the district court's mandatory enhancement of his offense level.

In addition, under the second scenario, Mr. Chavez has not demonstrated a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would reasonably impose a sentence outside the Guidelines range. *See Dazey*, 403 F.3d at 1175 & n. 5. In so doing, we recognize the Supreme Court, in *Booker*, held the Guidelines are now only advisory. 543 U.S. at ——, 125 S.Ct. at 768–69. Thus, we determine whether there is a " 'reasonable probability that if the district judge had not thought himself bound by the mandatory Guidelines to sentence in accordance with . . . judge-found, preponderance-of-the-evidence facts,' " he might have determined a lower sentence should be imposed. *See Ambort*, 405 F.3d at 1120 (quoting *Dazey*, 403 F.3d at 1177). In *Dazey*, we explained a defendant might make such a showing "if during sentencing the district court expressed its view that the defendant's conduct, based on the record, did not warrant the minimum Guidelines sentence." 403 F.3d at 1175.

In this case, nothing in the record indicates the district court would not impose the firearm enhancement under an advisory, rather than a mandatory, sentencing scheme or that it preferred to give Mr. Chavez a sentence lower than within the Guidelines range. While it declined the government's request for a sentence in the middle of the Guidelines range and, instead, sentenced him at the bottom of the sentencing range, it did not express a view Mr. Chavez's conduct did not warrant the minimum Guidelines sentence. *Id.* On remand, Mr. Chavez summarily suggests:

> Because the court sentenced Mr. Chavez to the minimum amount prescribed by law, it cannot be said with any degree of certainty that if given the opportunity to impose a shorter sentence, the court would not do so. To the contrary, it is more likely that, at the very least, the court would have sentenced Mr. Chavez to a period of incarceration less than the maximum prescribed by the applicable offense level.

This perfunctory argument, with nothing more to establish the district court would have imposed a lesser sentence under the advisory Guidelines, is insufficient for the purposes of this remand. Under these circumstances, Mr. Chavez has failed to establish a reasonable probability the district court would have imposed a lower sentence if it had not been under pre-*Booker* mandatory constraints. Because Mr. Chavez fails to meet his burden with respect to the third prong, it is unnecessary for us to address the last prong, given all four prongs must be met for successful plain error resolution.

### III. Conclusion

For the reasons set forth above, we **REINSTATE** our previous Order and Judgment in this case and **AFFIRM,** once again, Mr. Chavez's sentences after our reconsideration in light of *Booker*, pursuant to the Supreme Court's mandate.